# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE LOCK LOFT, LLC,<br>18105 Detroit Avenue<br>Lakewood, OH 44107<br>        *Plaintiff*<br><br>vs.<br><br>ERIE INSURANCE PROPERTY &<br>CASUALTY COMPANY d/b/a ERIE<br>INSURANCE EXCHANGE,<br>100 Erie Insurance Place<br>PO Box 1699<br>Erie, PA 16530<br>        *Defendant* | Case No.:    1:20cv122<br><br>JUDGE:<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT AND REQUEST FOR DECLARATORY RELIEF

Plaintiff, THE LOCK LOFT LLC, by and through undersigned counsel, state as follows for their Complaint and Request for Declaratory Relief against defendant ERIE INSURANCE PROPERTY & CASUALTY COMPANY d/b/a ERIE INSURANCE EXCHANGE:

### I.    INTRODUCTION

This is a class action brought by Plaintiff, The Lock Loft, LLC, against Defendant Erie Insurance Property & Casualty Company d/b/a Erie Insurance Exchange, related to an insurance policy that insures Plaintiff's property, business operations, and potential liabilities in connection with Plaintiff's business operations, which includes Income Protection Coverage ("IPC"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

Plaintiff made premium payments expecting in its time of need Defendant Erie Insurance Property & Casualty Co. would make good on its contractual obligations under the policy it wrote and issued. Then last month, Plaintiff was forced to shut down its businesses due to the coronavirus pandemic and related events. Specifically, effective March 18, 2020, during the term of the policy

1

issued by Erie Insurance Property & Casualty Co. to Plaintiff, Ohio Governor Mike DeWine issued an order closing barbershops, hair salons, nail salons, and tattoo parlors in the State of Ohio to the public in an effort to address the coronavirus and the pandemic. This has resulted in losses to businesses throughout the state of Ohio. Indeed, many businesses had to alter or shutter operations due to orders from Civil Authorities, such as the Ohio Governor and Ohio Director of Public Health. As a result, many insureds filed insurance claims for IPC, EE coverage, and coverage for loss due to the actions of a Civil Authority.

Upon information and belief, Defendant Erie Insurance Property & Casualty Co. systematically denied and or otherwise refused and continues to deny and refuse to pay on insurance claims brought by Plaintiff—and hundreds of other putative class members—for coverage for losses stemming from the presence of the SARS-CoV-2 virus and the COVID-19 pandemic, including of IPC, EE coverage, and coverage for loss due to the actions of a Civil Authority. Defendant's decision not to provide coverage and/or its decision to refuse to pay claims under the common policy form(s) issued to Plaintiff and the putative class members gives rise to Plaintiff's and the putative class members' right to seek declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the Class establishing that they are entitled to receive the benefit of the insurance coverage they purchased and for indemnification of the business losses they have sustained.

## II. PARTIES, JURISDICTION AND VENUE

1. Plaintiff, the Lock Loft LLC ("the Lock Loft" or Plaintiff), is a limited liability company organized under Ohio law with its principal places of business in Lakewood, Cuyahoga County, Ohio.

2. One or more of the members of Plaintiff are citizens of the state of Ohio.

3. Defendant Erie Insurance Property & Casualty Company d/b/a Erie Insurance Exchange ("Erie Insurance") is a Pennsylvania business corporation with its principal place of business in Erie, Erie County, Pennsylvania. Erie Insurance is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in Ohio and elsewhere.

4. The Court has subject matter jurisdiction over this matter under 28 U.S.C. 1332(a), because this matter involves citizens of different states and the amount in controversy exceeds $75,000.

5. The Court has subject matter jurisdiction over this matter under 28 U.S.C.1332(d)(2) and (6), as amended by the Class Action Fairness Act of 2005, because this matter was brought as a class action, the aggregate claims of the putative Class members exceed $5,000,000, exclusive of interest and costs, and at least one member of the putative Class is a citizen of a different state than Erie Insurance.

6. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1), as Defendant Erie Insurance is the only Defendant in this action and its principal place of business is located in Pennsylvania.

### III. FACTUAL SUMMARY

#### A. The Insurance Policy

7. This action is brought by Plaintiff, individually and on behalf of all other similarly situated insureds, that have been denied their contractual rights under common policy forms due to Defendant's decision not to provide coverage for losses stemming from the SARS-CoV-2 virus and/or the COVID-19 pandemic, including Income Protection Coverage ("ICP"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

8. At all times relevant, Defendant Erie Insurance insured Plaintiff pursuant to an insurance policy drafted by Erie Insurance (the "Policy").

9. Plaintiff is insured pursuant to policy number #Q97-1938248. A copy of the Policy is attached as Exhibit 1.

10. The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issued by Defendant Erie Insurance to the members of the putative class as defined herein.

11. The Insurance Services Office, Inc. ("ISO") publishes policy forms for use by the insurance industry.

12. The Policy utilizes, in part, policy forms and language published by the ISO, as reflected by the ISO copyright designation at the bottom of certain pages of the Policy.

13. Prior to the effective date of the Policy, ISO published and made available for use a standard virus exclusion form.

14. Defendant Erie Insurance chose not to include the ISO standard virus exclusion form in the Policy.

15. Other than reference to a computer virus, the Policy includes no exclusion that references the word virus.

16. Plaintiff's Policy provides Income Protection Coverage ("IPC"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

17. Relevant portions of the Policy provide, subject to other terms, that Defendant Erie Insurance provides coverage for:

> a. "Income Protection [which] means loss of 'income' and/or 'rental income' you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against"; and

4

  b. "'Extra Expense' [which] means necessary expenses you incur due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against"; and

  c. "…the actual loss of 'income' and/or 'rental income' you sustain and necessary 'extra expense' caused by action of civil authority that prohibits access to the premises described in the 'Declarations' … ."

18. The term "civil authority" is not defined in the Policy.

19. Defendant's standardized language in the Policy regarding coverage for loss of ICP, EE coverage, and coverage for loss due to the actions of a Civil Authority is present in every policy issued by Erie Insurance to Plaintiff and the putative class members as defined herein that provides coverage for IPC, EE coverage, and coverage for loss due to the actions of a Civil Authority.

20. As typified by Plaintiff's experience, Erie Insurance chose not to provide IPC, EE coverage, and coverage for loss due the actions of a Civil Authority under claims tendered for losses due to SARS-CoV-2 at, in, on or around insureds' premises, losses due to the spread of SARS-CoV-2 and/or COVID-19 in the community (the "COVID-19 Pandemic"), or losses due to Civil Authority orders addressing SARS-CoV-2 and the COVID-19 Pandemic.

21. While the Policy was in force, Plaintiff sustained, and continues to sustain, loss(es) due to SARS-CoV-2 and COVID-19 at, in, on, and/or around its premises described in the Policy.

22. While the Policy was in force, Plaintiff sustained, and continues to sustain, loss(es) due to the spread of SARS-CoV-2 and COVID-19 in the community.

23. While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to the civil authority orders issued by the Governor of Ohio and the Ohio Department of Health addressing SARS-CoV-2 and COVID-19 Pandemic.

  **B. The SARS-CoV-2 Virus**

24. SARS-CoV-2 is a virus.

25. SARS-CoV-2 is a physical substance.

26. SARS-CoV-2 can cause the illness known as COVID-19, which can be lethal.

27. SARS-CoV-2 can be present outside the human body in viral fluid particles.

28. SARS-CoV-2 can and does remain capable of being transmitted and active on inert physical surfaces for a period of time.

29. SARS-CoV-2 can and does remain capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, countertops, computer keyboards, touch screens, cardboard packages, scissors, hairbrushes, food items, silverware, plates, serving trays, glasses, straws, menus, pots, pans, kitchen utensils, faucets, refrigerators, freezers, and other items of property for a period of time.

30. SARS-CoV-2 can be transmitted by way of human contact with surfaces and items of physical property on which SARS-CoV-2 particles are physically present.

31. SARS-CoV-2 has been transmitted by way of human contact with surfaces and items of physical property located at premises.

32. SARS-CoV-2 has been transmitted by human to human contact and interaction at premises, including places like bars and restaurants, retail stores, and hair and beauty salons, for example.

33. SARS-CoV-2 can be transmitted through airborne particles emitted into the air at premises.

34. SARS-CoV-2 has been transmitted by way of human contact with airborne SARS-CoV-2 particles emitted into the air at premises.

35. The presence of any SARS-CoV-2 particles renders items of physical property unsafe.

36. The presence of any SARS-CoV-2 particles on physical property impairs its value, usefulness and/or normal function.

37. The presence of any SARS-CoV-2 particles causes direct physical harm to property.

38. The presence of any SARS-CoV-2 particles causes direct physical loss to property.

39. The presence of any SARS-CoV-2 particles can result in the direct physical loss of property.

40. The presence of any SARS-CoV-2 particles causes direct physical damage to property.

41. The presence of any SARS-CoV-2 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness and/or normal function.

42. The presence of people infected with COVID-19 or carrying SARS-CoV-2 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to and of that property.

43. The presence of people infected with COVID-19 or carrying SARS-CoV-2 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to and of the premises and property.

**C. Response to SARS-CoV-2 and COVID-19 – Civil Authority Orders**

44. In response to SARS-CoV-2 and the COVID-19 Pandemic, the Governor of Ohio has issued multiple executive orders pursuant to the authority vested in him by the Ohio Constitution and the laws of Ohio.

45. Similarly, the Ohio Department of Health, pursuant to its authority under Ohio law, has issued multiple orders, including a Stay At Home Order.

46. The State of Ohio is a civil authority as contemplated by the Policy.

47. The Ohio Department of Health is a civil authority as contemplated by the Policy.

48. The Governor of the State of Ohio is a civil authority as contemplated by the Policy.

49. On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic.

50. Civil Authorities, including state and local governmental agencies and/or offices have issued orders substantially similar to those issued by Ohio Governor DeWine and the Ohio Department of Health restricting business operations and access to property in states, counties, cities and communities throughout the country in response to SARS-CoV-2 and the COVID-19 Pandemic.

51. On March 9, 2020, Ohio Governor Mike DeWine issued Executive Order 2020-01D, which declared a state of emergency in response to the physical presence of SARS-CoV-2 and the COVID-19 Pandemic.

52. On March 18, 2020, Ohio ordered the temporary closure of all barbershops, hair salons, nail salons, and tattoo parlors in the State of Ohio.

53. On March 22, 2020, the Ohio Department of Health issued a Stay at Home Order, effective March 23, 2020, ordering Ohio residents to stay at home. By way of this order, the State of Ohio ordered all non-essential businesses in Ohio to cease all activities.

### D. Ohio's Exercise of Civil Authority Closes Plaintiff's Business

54. Plaintiff's business does not qualify as an Essential Business under governing civil authority orders and was required to cease and/or significantly reduce operations.

55. The civil authority orders prohibited access to Plaintiff's premises described in the Policy.

56. The State of Ohio, through the Governor and the Department of Health, have issued, and continue to issue, authoritative orders governing Ohioans and Ohio businesses, including Plaintiff, in response to SARS-CoV-2 and the COVID-19 Pandemic, the effect of which have required and continue to require Plaintiff to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in the Policy.

57. State and local governmental authorities, and public health officials around the Country, acknowledge that SARS-CoV-2 and the COVID-19 Pandemic cause direct physical loss and damage to property. For example:

   a. The state of Colorado issued a Public Health Order indicating that "COVID-19… physically ***contributes to property loss, contamination, and damage***…" (Emphasis added);

   b. The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus ***physically is causing property loss and damage***." (Emphasis added);

   c. Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "***is physically causing property damage***." (Emphasis added);

   d. The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression… remains a public disaster affecting life, health, [and] ***property***…" (Emphasis added);

   e. The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to ***physically*** impact surfaces and personal ***property***." (Emphasis added);

   f. The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and ***causing property loss and damage*** in certain circumstances." (Emphasis added);

    g. The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "*property*." (Emphasis added);

    h. North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of… *property*." (Emphasis added); and

    i. The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is *physically causing property loss or damage* due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

58. SARS-CoV-2 and the COVID-19 Pandemic are physically impacting public and private property throughout the country.

59. SARS-CoV-2 and the COVID-19 Pandemic have caused and continue to cause direct physical loss and damage to property.

60. People have been diagnosed with COVID-19.

61. People have, and have had, SARS-CoV-2 but have not been diagnosed with COVID-19.

62. People have SARS-CoV-2 particles on or about their person and personal property.

63. Properties and premises throughout Ohio and the country contain the presence of SARS-CoV-2 particles on surfaces and items of property.

64. It is probable that SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

65. It is probable that SARS-CoV-2 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the time the Policy was in effect.

66. It is probable that airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

10

67. It is probable that people carrying SARS-CoV-2 particles in, on or about their person have been present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

68. It is probable that airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

69. Plaintiff has sustained direct physical loss of and damage to items of property located at its premises and direct physical loss of and damage to its premises described in the Policy as a result of the presence of SARS-CoV-2 particles and/or the Pandemic.

70. Plaintiff submitted a timely insurance claim to Defendant Erie Insurance.

71. Defendant Erie Insurance has denied or otherwise refused to honor Plaintiff's claim(s) for coverage under the Policy.

### IV. CLASS ALLEGATIONS

72. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), Plaintiff brings this action on behalf of itself and the following class (the "Class") of similarly situated businesses and persons:

> All Ohio businesses or persons insured under a policy issued by Erie Insurance Property & Casualty Company with the same operative language as policy form number Q97-1938248 with Income Protection, Extra Expense and Civil Authority coverage who were denied coverage arising out of a claim(s) for SARS-CoV-2, COVID-19, the COVID-19 Pandemic and/or COVID-19 civil authority order-related losses.

73. The following are Excluded from the Class: Defendant, including any parent, subsidiary, affiliate, or controlled person of Defendant; Defendant's officers, directors, agents, or employees; and the judicial officers assigned to this litigation, and any members of their staffs and immediate families.

74. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether certification is appropriate.

   a. **Numerosity**

75. The precise number of class members for the Class are unknown to Plaintiff at this time but can be easily determined through appropriate discovery. Plaintiff believes that, because Defendant is a large insurer, the class of businesses and people affected by Defendant's practices described herein consists of at least hundreds of businesses and people or the Class of businesses and people affected is otherwise so numerous that joinder of all Class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits properly owed to Plaintiff and the Class members. The class definition will permit the court to reasonably ascertain whether any individual or entity is a member of the Class as any individual who or entity that is insured by Defendant and was denied coverage for SARS-CoV-2 related losses covered by IPC, EE, or Civil Authority provisions.

76. Upon information and belief, Defendant uniformly refuses to pay its insureds for SARS-CoV-2 related losses covered by IPC, EE coverage, and/or Civil Authority provisions of its business insurance policies. Accordingly, the Class consists of many hundreds, if not thousands, of Defendant's insureds who were not paid or afforded coverage under the terms of their insurance policies. Thus, pursuant to Federal Rules of Civil Procedure 23(a)(1), the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

   B. **Commonality**

12

77. Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class is identical. Defendant uniformly refuses to pay for losses covered by IPC, EE coverage, and/or Civil Authority provisions arising from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic. Indeed, upon information and belief, Defendant responds to every claim at issue with an identical or near identical form letter reserving its rights and refusing to honor the claim(s).

78. Plaintiff shares a common interest with all members of the putative Class in the objects of the action and the relief sought.

79. Plaintiff satisfies Federal Rules of Civil Procedure 23(a)(2)'s commonality requirement because its claims arise from a practice which Defendant applies uniformly to all the similarly situated Class members and are based on the same legal theories as all other members of the putative class, that coverage for SARS-CoV-2 related losses of IPC, EE coverage, and coverage for loss due to the actions of a Civil Authority. Because Defendant's conduct was and is uniform as to all Class members, the material elements of Plaintiff's claims and those of absent Class members are subject to common proof, and the outcome of Plaintiff's individual action will be dispositive for the Class. The common questions include, but are not limited to, the following: (1) whether SARS-CoV-2 can cause direct physical loss of or damage to property as stated in the common policy forms at issue; (2) whether SARS-CoV-2 and/or COVID-19 is a peril insured against under the Policy; (3) whether the COVID-19 Pandemic is a peril insured against under the common policy forms at issue; (4) whether the losses incurred by insureds as the result of the orders issued by the Governor of Ohio and the Ohio Department of Health are perils insured against under common policy forms at issue; (5) whether insureds are entitled to coverage for their past and future income and rental income loss(es) and Extra Expense resulting from SARS-CoV-2,

13

COVID-19 and/or the COVID-19 Pandemic for the time period set forth in the common policy forms at issue; (6) whether insureds are entitled to coverage for loss(es) due to the actions of Ohio's civil authorities, including the Governor of Ohio and the Ohio Department of Health and similar orders; and (7) whether insureds have coverage for any substantially similar civil authority order in the future that limits or restricts the access to insureds places of business and/or their operations.

### C. Typicality

80. Pursuant to Federal Rules of Civil Procedure 23(a)(3), Plaintiff's claim is typical of the claims of all other members of the Class because all such claims arise from the Defendant's failure to provide coverage for losses covered by IPC, EE coverage, and/or Civil Authority provisions.

81. Plaintiff and Class members' legal claims arise from the same core practices, namely, the refusal to provide coverage for SARS-CoV-2 related losses covered by IPC, EE coverage, and/or Civil Authority provisions. The material facts underlying the claims of each putative class member are the same material facts as those supporting the Plaintiff's claims alleged herein and require proof of the same material facts.

### D. Adequacy

82. Plaintiff can and will adequately represent the putative class and its interests are common to, and coincident with, those of all absent class members. By proving its individual claims, Plaintiff will necessarily prove the claims of the putative class and prove Defendant's liability to the Class. Plaintiff have no known conflicts of interest with any members of the Class; their interests and claims are not antagonistic to those of any other class members; nor are their claims subject to any unique defenses.

83.     The representative Plaintiff therefore can and will fairly and adequately protect and represent the interests of the Class under the criteria set forth in Federal Rules of Civil Procedure 23(a)(4).

84.     Plaintiff's counsel—Spangenberg Shibley & Liber, LLP, and Rutter & Russin, LLC—have extensive experience in complex commercial litigation, insurance coverage dispute litigation, class actions, and have adequate financial resources to ensure that the interests of the Class will not be harmed.

85.     If appointed class representative, Plaintiff is aware of, and is committed to, faithfully upholding its fiduciary duties to absent Class members. Plaintiff and their counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the class is fairly represented.

86.     Plaintiff and its counsel will therefore fairly and adequately assert and protect the interests of the Class.

### E. **Declaratory Relief Under Rule 23(b)(1)(A)**

87.      Pursuant to Federal Rules of Civil Procedure 23(b)(1)(A), class treatment is warranted because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class.

88.     Defendant's standardized language in the Policy and forms at issue regarding coverage for IPC, EE coverage, and coverage for loss due to the actions of a civil authority is present in every Erie Insurance policy issued by Defendant to the putative Class members that provides for IPC, EE coverage, and coverage for loss due the actions of a Civil Authority.

15

89. As a result, separate actions brought by individual Class members would possibly lead to a situation where identical language is interpreted differently.

### F. Declaratory Relief Under Rule 23(b)(2)

90. Pursuant to Federal Rules of Civil Procedure 23(b)(2), class treatment is warranted because Defendant has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

91. Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

92. Because Defendant has acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

93. Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

### COUNT I: DECLARATORY JUDGMENT

94. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

95. Plaintiff bring this count on behalf of themselves and all members of the Class.

96. There is a dispute about whether Plaintiff and the Class members are entitled to coverage under the Policy for their loss(es) sustained and to be sustained in the future as described

herein. Accordingly, Plaintiff is entitled to declaratory relief from this Court pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the Class.

97. Plaintiff is entitled to and demands a declaration that:

   a. Plaintiff and the Class members sustained direct physical loss or damage to property at theirs premises described in the Policies as a result of SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic;

   b. SARS-CoV-2 and/or COVID-19 is a peril insured against under the Policy;

   c. The COVID-19 Pandemic is a peril insured against under the Policy;

   d. The losses incurred by Plaintiff and the Class members as the result of the orders issued by the Governor of Ohio and the Ohio Department of Health and other similar orders issued by other civil authorities are perils insured against under the Policy;

   e. Defendant Erie Insurance has not and cannot prove the application of any exclusion or limitation to the coverage for Plaintiff and the Class members' losses alleged herein;

   f. Plaintiff and the Class members are entitled to coverage for their past and future income and rental income loss(es) and Extra Expense resulting from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic for the time period set forth in the Policy;

   g. Plaintiff and the Class members are entitled to coverage for loss(es) due to the actions of Ohio civil authorities, including the Governor of Ohio and the Ohio Department of Health, and civil authority orders governing their businesses;

   h. Plaintiff and the Class members have coverage for any substantially similar civil authority order in the future that limits or restricts the access to Plaintiff or the Class members' places of business and/or their operations; and

   i. Any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

98. Plaintiff and the Class members do not seek a determination of their damages resulting from SARS-CoV-2, the COVID-19 or the COVID-19 Pandemic. If there is a dispute between the parties as to the amount of the loss, the Policy provides that such a dispute should be resolved by Appraisal:

17

**APPRAISAL**

If you and we fail to agree on the cost to repair damage to covered property caused by a covered peril insured against, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days after both appraisers have been identified, you or we can ask a judge of a court of record in the state where your principal office is located to select an umpire.

The appraisers shall then determine the cost to repair damage to covered property. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of direct and accidental 'loss' of or damage to covered property. If they cannot agree they will submit their differences to the umpire. A written award by two will determine the amount of direct and accidental 'loss' of or damage to covered property.

Each party will pay the appraiser it chooses, and equally bear expenses of the appraisal. However, if the written demand for appraisal is made by us, we will pay for the reasonable cost of your appraiser and your share of the cost of the umpire. (PK-00-01 (Ed. 5/20) CL-0001, Page 32)

99. Plaintiff, individually and on behalf of those similarly situated, prays for declaratory relief from the Court that Defendant Erie Insurance must resolve any dispute about the amount of loss via Appraisal. Plaintiff also request the Court to appoint the umpire if the appraisers cannot agree.

100. Plaintiff, individually and on behalf of those similarly situated, prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

WHEREFORE, Plaintiff, individually and on behalf of those similarly situated, seek judgment against Defendant Erie Insurance, as set forth above, plus interest, costs, and attorney fees as allowed by law.

**DEMAND FOR TRIAL BY JURY**

Dated: May 26, 2020

Respectfully Submitted,

*/s/ Robert P. Rutter*

Robert P. Rutter (OH Bar 0021907)
Robert A. Rutter (OH Bar 0081503, Pro Hac Vice motion forthcoming)
**RUTTER & RUSSIN, LLC**
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
(216) 642-0613
brutter@OhioInsuranceLawyer.com
bobbyrutter@OhioInsuranceLawyer.com

Nicholas A. DiCello (OH Bar 0075745, Pro Hac Vice motion forthcoming)
Dennis R. Lansdowne (OH Bar 0026036, Pro Hac Vice motion forthcoming)
Stuart Scott (OH Bar 0064834, Pro Hac Vice motion forthcoming)
Jeremy A. Tor (OH Bar 0091151, Pro Hac Vice motion forthcoming)
**SPANGENBERG, SHIBLEY & LIBER, LLP**
1001 Lakeside Ave., Suite 1700
Cleveland, Ohio 44114
(216) 696-3232
(216) 696-3924
ndicello@spanglaw.com
dlansdowne@spanglaw.com
sscott@spanglaw.com
jtor@spanglaw.com