# EXHIBIT "6"

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

INFINITY EXHIBITS, INC.,

    Plaintiff,

v.                                     Case No: 8:20-cv-1605-T-30AEP

CERTAIN UNDERWRITERS AT
LLOYD'S LONDON KNOWN AS
SYNDICATE PEM 4000 and
HAMILTON DESIGNATED ACTIVITY
COMPANY,

    Defendants.

## ORDER

This cause is before the Court on Defendants Certain Underwriters at Lloyd's, London Known as Syndicate PEM 4000's and Hamilton Designated Activity Company's (collectively "Underwriters") Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 11), Plaintiff's Response in Opposition (Dkt. 16), and Defendant's Reply (Dkt. 19). Upon review of these filings, and upon being otherwise advised in the premises, the Court concludes that Defendants' motion should be granted because Plaintiff has not adequately alleged direct physical loss or damage to the subject property or any surrounding property. The Court also concludes that further amendment would be futile. Accordingly, the amended complaint will be dismissed with prejudice.

## BACKGROUND

### A. The Policies

Underwriters provided two property insurance policies to Plaintiff Infinity

Exhibits, Inc., a company that designs and fabricates trade show displays. The first policy, number 994OR100192, was issued for the period April 4, 2019, to April 4, 2020, and insured the property located at 2226 8th Street, Sarasota, FL 34237 (the "Property"). The second policy, number 994OR100642, insures the Property for the April 4, 2020, to April 4, 2021 period. *See* Complaint, Exhibits A (at p.32 of 160) and B (at p. 96 of 160) [Dkt. 1-2], collectively referred to as the "Policies."

The Policies' insuring clause provides:

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policies, [Dkt. 1-2], Exhibits A and B, Form CP 00 10 10 12, at p. 1 of 16).

The Policies provide coverage for loss of "Business Income" and state in relevant part:

### 1. Business Income

\* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". *The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations* and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

(Exhibits A and B, Form CP 00 30 10 12, at p. 1 of 9) (emphasis added).

2

The Policies also provide coverage for "Extra Expense:"

> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been *no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss*.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> > (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
> >
> > (2) Minimize the "suspension" of business if you cannot continue "operations".
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

(Policies, [Doc. 1-2] Exhibits A and B, Form CP 00 30 10 12, p. 1-2 of 9) (emphasis added).

The Policies define the "period of restoration," in part, as:

> … the period of time that:
>
> > a. Begins:
> >
> > > (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
> > > (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
> >
> > caused by or resulting from any Covered Cause of Loss at the described premises; and

3

  b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
(2) The date when business is resumed at a new permanent location.

(Policies, [Dkt.1-2] Exhibits A and B, Form CP 00 30 10 12, at p. 9 of 9).

The Policies provide "Civil Authority" coverage as follows:

**5. Additional Coverages**

 **a. Civil Authority**

*When a Covered Cause of Loss causes damage to property other than property at the described premises*, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)**   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damage property; and
**(2)**   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Policies, [Dkt. 1-2] Exhibits A and B, Form CP 00 30 10 12, p. 2 of 9) (emphasis added).

 **B. The Insurance Claim**

Plaintiff submitted a claim seeking recovery for business income loss as a result of state orders issued in response to the Novel Coronavirus Disease 2019

4

("COVID-19") pandemic (the "Claim"). (Dkt. 1-2, Exhibit 1 at ¶ 51).

According to the Amended Complaint, Plaintiff began to lose income on or about March 2, 2020, as a result of cancelled trade shows. The Amended Complaint references an order enacted by Florida Governor Ron DeSantis mandating the closure of non-essential businesses on April 1, 2020. *Id.* at ¶44. The Amended Complaint does not include any allegations that Plaintiff was precluded from accessing the Property as a result of COVID-19 or any of the related government orders and social distancing requirements. The Amended Complaint does not describe how the Property or any other property experienced "direct physical loss or damage."

Underwriters moves to dismiss the entirety of the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Underwriters' main argument is that the Policies do not cover the Claim because Plaintiff has not alleged direct physical loss or damage to the Property. The Court agrees.

**STANDARD OF REVIEW**

Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations

5

contained in the complaint as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Legal conclusions, though, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## DISCUSSION

Under Florida law, the interpretation of an insurance contract, including resolution of any ambiguities contained therein, is a question of law to be decided by the court. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) (citing *Sproles v. Amer. States Ins. Co.*, 578 So. 2d 482, 484 (Fla. 5th DCA 1991)). In construing an insurance contract, a court must strive to give every provision meaning and effect. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *Excelsior Ins. Com. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). A party claiming coverage bears the burden of proof to establish that coverage exists. *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3rd DCA. 1977). The Florida Supreme Court

has noted that an "all-risk" policy—like the Policies at issue in this case—is not an "all loss policy, and thus does not extend coverage for every conceivable loss." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696-97 (Fla. 2016) (citation omitted).

Plaintiff argues that economic damage is synonymous with "physical loss" and is therefore covered under the Policies. Plaintiff's argument is unpersuasive because Florida law and the plain language of the Policies reflect that actual, concrete damage is necessary. In *Mama Jo's Inc. v. Sparta Insurance Company,* No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020), the Eleventh Circuit recently held that "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" (quoting *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017)); *see also Vazquez v. Citizens Prop. Ins. Corp.*, ––– So.3d ––––, ––––, 2020 WL 1950831, at *3 (Fla. 3d DCA 2020). The Eleventh Circuit noted that the definition of "direct physical loss" is the diminution of value of something. Specifically: "Direct and physical modify loss and impose the requirement that the damage be actual." 2020 WL 4782369, at *8.

The *Mama Jo's* opinion undercuts Plaintiff's response in opposition to Underwriters' motion because it rejects Plaintiff's argument that the Policies are ambiguous. The opinion also rejects Plaintiff's contention that pure economic losses are covered. Notably, although *Mama Joe's* was not about closures related to COVID-19, the initial claim had two components: one for cleaning the restaurant and another for Business Income Loss related to nearby road construction that caused dust and debris to interfere

7

with the operation of the plaintiff's restaurant. Like the Policies here, the policy's Building and Personal Property Coverage Form stated that the insurance company "will pay for direct physical loss of or damage to Covered Property ... caused by or resulting from any Covered Cause of Loss."

The policy's Business Income Coverage Form provided that the insurance company will pay for "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" The "'suspension' must be caused by direct physical loss of or damage to" covered property. *Id.* (internal citations omitted). The Eleventh Circuit held that, even if the plaintiff had shown a "suspension" of operations as a result of the construction, the plaintiff did not establish that "it suffered a direct physical loss of or damage to its property during the policy period." *Id.*

Significantly, Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage. For example, in *Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*, No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020), the plaintiff chiropractor sought coverage for loss of income due to government orders that restricted plaintiff's ordinary use of its property. The court dismissed the action with prejudice, holding that the plaintiff had failed to demonstrate tangible damage to covered

8

property, as "plainly" required by the policy term "direct physical loss." *Id.* at *8.

In *10E, LLC v. Travelers Indemnity Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020), the plaintiff sought coverage for income lost as a result of government shutdown orders that prevented the ordinary and intended use of a property. The court dismissed the action, holding that the plaintiffs "cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage," and noting that impaired use or value cannot substitute for physical loss or damage. *Id.* at *5.

In *Malube, LLC v. Greenwich Insurance Co.*, No. 1:20-cv-22615-KMW, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020), the plaintiff sought coverage for lost income due to government orders that restricted the plaintiff's ability to use its property as intended. The Magistrate Judge's Report and Recommendation concluded that the action should be dismissed because the policy required direct physical loss or property damage and plaintiff had alleged "merely [] economic losses—not anything tangible, actual, or physical." *Id.* at *8; *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of America*, C.A. No. 4:20-cv-03213-JST (N.D. Cal. Sept. 14, 2020) (granting insurer's motion to dismiss); *Pappy's Barber Shops, Inc., et al. v. Farms Group, Inc., et al.*, C.A. No. 3:20-cv-907-CAB-BLM (S.D. Cal. Sept. 11, 2020) (granting insurer's motion to dismiss); *Diesel Barbershop, LLC v. State Farm Lloyds*, C.A. No. 5:20-cv-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (granting insurers' motion to dismiss); *Soc. Life Magazine, Inc. v. Sentinel Ins. Co.*, C.A. No. 20-cv-3311-VEC (S.D.N.Y. May 14, 2020) (denying insured's motion for preliminary

9

injunction seeking coverage); *The Inns by the Sea v. Cal. Mut. Ins. Co.*, C.A. No. 20-cv-001274 (Cal. Super. Ct. Aug. 6, 2020) (granting insurer's demurrer); *Rose's 1, LLC v. Erie Ins. Exch.*, C.A. No. 2020-CA-002424-B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) (granting insurer's summary judgment motion); *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, C.A. No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020) (granting insurer's motion for "summary disposition" which under Michigan law was on a motion to dismiss standard).

In sum, although the Court is sympathetic to Plaintiff and all insureds that experienced economic losses associated with COVID-19, there is simply no coverage under the policies if they require "direct physical loss of or damage" to property. Here, there is no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage. It is also apparent that any amendment would be futile under these circumstances.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants Certain Underwriters at Lloyd's, London Known as Syndicate PEM 4000's and Hamilton Designated Activity Company's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 11) is granted.

2. The Amended Complaint is dismissed with prejudice.

3. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

10

**DONE** and **ORDERED** in Tampa, Florida, this September 28, 2020

*[signature]*

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record